UNITED STATES of America, Plaintiff,

and

State of Minnesota, by its Attorney General Hubert H. Humphrey, III, its Department of Health, and its Pollution Control Agency, Plaintiff-Intervenor,

v.

REILLY TAR & CHEMICAL CORPORATION; Housing and Redevelopment Authority of St. Louis Park; Oak Park Village Associates, Rustic Oaks Condominium, Inc., and Philip's Investment Co., Defendants,

and

CITY OF ST. LOUIS PARK, Plaintiff-Intervenor,

v.

REILLY TAR & CHEMICAL CORPORATION, Defendant,

and

CITY OF HOPKINS, Plaintiff-Intervenor,

v.

REILLY TAR & CHEMICAL CORPORATION, Defendant.

REILLY TAR & CHEMICAL CORPORATION, Plaintiff,

v.

UNITED STATES of America; United States Environmental Protection Agency; Lee M. Thomas, Administrator, United States Environmental Protection Agency; Jock McGraw, Acting Assistant Administrator, Office of Solid Waste and Emergency Response of the Environmental Protection Agency; Valdas V. Adamkus, Regional Administrator of Region 5 of the Environmental Protection Agency; and Duane A. Dahlberg, Chairperson of the Minnesota Pollution Control Board; Thomas J. Kalitowski, Director of the Minnesota Pollution Control Agency, and

Hubert H. Humphrey, III, Attorney General of the State of Minnesota, Defendants.

Civ. Nos. 4-80-469, 3-85-473.

United States District Court,
D. Minnesota,
Fourth Division.

April 5, 1985.

William Sierks, David Hird, Donald Hornstein, Environmental Enforcement Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Robert E. Leininger, Asst. Regional Counsel, U.S. Environmental Protection Agency, Region V, Chicago, Ill., Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., for U.S.A.

Stephen Shakman, Lisa Tiegel, Minnesota Pollution Control Agency, Roseville, Minn., for State of Minnesota.

Edward J. Schwartzbauer, Michael J. Wahoske, Bill Keppel, Rebecca A. Comstock, Dorsey & Whitney, Minneapolis, Minn., for Reilly Tar & Chemical Corp.

Wayne G. Popham, Thomas E. Mielenhausen, Allen Hinderaker, Kathleen Martin, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for City of St. Louis Park.

Jerre A. Miller, Vesely & Miller, Hopkins, Minn., and Russell C. Brown, Stolpes-

tad, Brown & Smith, St. Paul, Minn., for City of Hopkins.

Laurance R. Waldoch, Lindquist & Vennum, Minneapolis, Minn., for Oak Park Village.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, Minn., for Philip's Inv. Co.

James T. Swenson, Mackall, Crounse & Moore, Minneapolis, Minn., for T.C.F. Service Corp., successor in interest to Rustic Oaks Condominium, Inc.

## MEMORANDUM ORDER

MAGNUSON, District Judge.

At issue in this case is the constitutionality of the punitive damages provision of the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.*, and the penalty provision of the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. § 115B.01 *et seq.* (1984). This matter is before this court upon Reilly Tar's motion for a preliminary injunction seeking to prevent the accrual of the penalty provisions of CERCLA and MERLA. This action has an extensive litigation history and a brief recitation of that history is necessary in order to understand the issue raised by Reilly Tar's motion.[1]

## BACKGROUND

Reilly Tar & Chemical Corporation (Reilly Tar) operated a plant in St. Louis Park, Minnesota where it processed coal tar into creosote and treated wood products with creosote. The plant was operational between 1917 and 1972 and during that time Reilly Tar disposed of chemical wastes at the St. Louis Park facility. As early as 1933, a dispute erupted between the City of St. Louis Park and Reilly Tar over Reilly Tar's method of disposing of its chemical wastes and the possibility that it had contaminated the underground water supply in the area.

The dispute between the City and Reilly Tar resulted in the State and City filing a lawsuit against Reilly Tar in state court in 1970. *See State of Minnesota, et al v. Reilly Tar & Chemical Corp.,* File No. 670767 (4th Jud.Dist.Minn.). That lawsuit ended in a settlement in 1973 whereby the City of St. Louis Park purchased the Reilly Tar site and entered into an agreement with Reilly Tar which provided that:

> The City hereby agrees to hold Reilly harmless from any and all claims which may be asserted against it by the State of Minnesota, acting by and through the Pollution Control Agency, and will be fully responsible for restoring the property, at its expense, to any condition that may be required by the Minnesota Pollution Control Agency.

The State of Minnesota never signed the settlement document or executed a dismissal of the Reilly Tar action. In 1978, the State of Minnesota amended its complaint in the state court action alleging claims of groundwater contamination and the City of St. Louis Park intervened.

In 1980 the United States commenced this action under the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6973. Three weeks after filing this action, the United States amended its Complaint to allege a cause of action under the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 et seq. The State of Minnesota, the City of St. Louis Park and the City of Hopkins subsequently intervened and since that time the state court action against Reilly Tar has remained dormant. In this action the United States is seeking injunctive relief to abate soil and groundwater contamination caused by Reilly Tar's operation of its St.

---

1. There are actually two actions before this court. *United States v. Reilly Tar,* Civil File No. 4-80-469 is the main action which has been pending before this court for over four years. The other action, *Reilly Tar v. United States,* Civil File No. 3-85-473 is a new action which was filed specifically for the purpose of bringing this preliminary injunction. It appears as though Reilly Tar filed the second action, adding certain individual defendants, in the hope of avoiding any abstention or Eleventh Amendment immunity issues that might be raised.

Louis Park plant, as well as recovery of certain costs incurred in connection with the cleanup of the Reilly Tar site.

Reilly Tar claims that this lawsuit was settled in 1973 and that, to the extent it was not settled, the City of St. Louis Park is liable for cleanup costs because it entered into a hold harmless agreement with Reilly Tar. The City of St. Louis Park has taken the position that the 1973 settlement did not contemplate groundwater contamination.

In November of 1984, this court issued a Case Management Order setting discovery deadlines and dividing this trial into two phases. Phase I of the trial will encompass those issues brought under RCRA, CERCLA and certain common law theories focusing upon the appropriate remedy for cleaning up the Reilly Tar site. Phase II of the trial will focus upon the issues related to the 1973 settlement of the state court action and the applicability of the hold harmless clause.

On August 1, 1984, the Environmental Protection Agency (EPA) issued an administrative order requiring Reilly Tar to construct and maintain a granular activated carbon water treatment system to purify the water drawn from St. Louis Park wells. On December 18, 1984 the Minnesota Pollution Control Agency (MPCA) issued a Request for Response Action (RFRA) to Reilly Tar ordering it to perform, according to a predetermined schedule, the remedial actions requested by the State of Minnesota in this action. The issuance of the EPA administrative order and the RFRA by the MPCA are the events which trigger the imposition of the punitive damages and penalty provisions of CERCLA and MERLA. With respect to both the state and federal orders Reilly Tar contends the remedial action it has been ordered to perform is far more expensive than what is required to remedy properly the pollution problem at the Reilly Tar site. The dispute over the appropriate remedy is the primary issue before this court in Phase I of this trial which is scheduled to begin in September. Accordingly, Reilly Tar has refused to comply with both the state and federal order.

## STATUTORY SCHEME—CERCLA AND MERLA

Before examining in detail the nature of Reilly Tar's constitutional attack upon the penalty provisions of CERCLA and MERLA, it is necessary to briefly outline the relevant provisions of those statutes. The Comprehensive Environmental Response, Compensation and Liability Act, in order to effectuate the twin goals of cleaning up hazardous waste sites as well as holding responsible parties liable for the cost of cleanup, established several different methods for an agency to ensure the clean up of a hazardous waste site. One option of the EPA is to utilize Superfund money to clean up the site and then institute a cost recovery action against the responsible parties. 42 U.S.C. § 9607(4). *See Aminoil, Inc. v. United States E.P.A.*, 599 F.Supp. 69, 73 (C.D.Cal.1984).

Because the number of sites far exceed the available dollars in the Superfund, however, Congress established a second method for cleaning up hazardous waste sites. The second method established by Congress calls for the EPA to order a responsible party to clean up a hazardous waste site. 42 U.S.C. § 9606(a). *Aminoil*, 599 F.Supp. 69 at 73. Within this second method the EPA has two options available to it. First, it may institute an enforcement action in court in which it seeks to have the court issue a mandatory injunction delineating the specific type of cleanup required. 42 U.S.C. § 9606(a). That is the option the EPA initially chose to follow in this case. Another agency option is to issue an administrative order, such as the order recently issued to Reilly Tar, ordering an allegedly responsible party to clean up utilizing the remedial method chosen by the agency. *Id.*

At this point in the discussion of CERCLA it is important to note that the appropriate remedial action is at the heart of the dispute between Reilly Tar and the governmental entities in this action. It is Reilly

Tar's contention that the clean up proposed by the federal government, the construction and operation of a granular activated carbon treatment system in St. Louis Park, is far more expensive than is necessary in order to alleviate any danger to the St. Louis Park water supply. Reilly Tar has strenuously argued that it is unfair for the government, after four years of litigation in which the government has sought to have the *court* determine the appropriate remedy for the Reilly Tar site, to preempt suddenly the court's authority by ordering Reilly Tar to comply with the EPA's determination of the appropriate remedy.

In response to the EPA order, Reilly Tar has several options. First, Reilly Tar may comply with the EPA order and expend the funds required for the remedy advocated by the EPA. However, if Reilly Tar complies with the EPA order and it is subsequently found at trial that the EPA remedy was unnecessary, Reilly Tar has no right of reimbursement to recover its expenses incurred in the cleanup. *Aminoil, Inc. v. United States E.P.A.*, 599 F.Supp. 69, 73–74 (C.D.Cal.1984). Thus, if Reilly Tar complies with the EPA order there will be no meaningful opportunity to test the merits of the EPA order.

Reilly Tar's second option, the one apparently chosen in this action, is to refuse to comply with the order of the EPA. If Reilly Tar refuses to comply with the order of the EPA and the EPA then expends Superfund money to clean up the site, this action will be converted from an action seeking a mandatory injunction against Reilly Tar to a cost recovery action. However, by refusing to comply with the EPA order Reilly Tar also exposes itself to liability under the punitive damages provisions of CERCLA. 42 U.S.C. § 9607(c)(3) provides that:

> If any person who is liable for a release or threat of release of a hazardous substance fails *without sufficient cause* to properly provide removal or remedial action upon order of the President pursuant to section 9604 or section 9606 of this title, such person *may* be liable to the United States for punitive damages in an amount at least equal to, and not more than three times the amount of any costs incurred by the Fund as a result of such failure to take proper action.

The order issued by the EPA to Reilly Tar is an order under section 9606 and, hence, if Reilly Tar does not have "sufficient cause" for resisting the EPA's order, it may be liable for treble damages.

The Minnesota Environmental Response and Liability Act provides a parallel, though slightly different, mechanism for cleaning up hazardous waste sites. Just as with CERCLA, MERLA established a superfund to be used to clean up sites with state money if necessary. Minn.Stat. § 115B.20 (1984). However, in order to preserve state resources for those cases where they are truly needed, the MPCA may not utilize superfund money unless it has first requested that a responsible party perform the clean up. Minn.Stat. § 115B.17(1)(a)(1) (1984). That request is known as a request for response action (RFRA). The MPCA issued a Request for Response Action to Reilly Tar. A second prerequisite to obtaining access to superfund money is that the agency determine that no responsible party will perform the requested remedial action. Minn.Stat. § 115B.17(1)(a)(3). This determination is made in a document known as a Determination of Inadequate Response (DIR). Only after a determination is made that no responsible party will pay for the requested remedial action can the MPCA use its superfund money. Section 115B.18(1) of MERLA provides in part that:

> Any person responsible for a release or threatened release from a facility ... shall forfeit and pay to the state a civil penalty in *an amount to be determined by the court* of not more than $20,000 per day for each day that the person fails to take reasonable and necessary response actions or to make reasonable progress in completing response action.

For failing to comply with the state RFRA, § 115B.18(1) exposes Reilly Tar to fines of up to $20,000 per day.

*Due Process*

Reilly Tar argues that the possibility that it will be found liable for punitive damages is so onerous that it is effectively precluded from testing the merits of the EPA and MPCA orders. The argument of Reilly Tar centers around a principle of law that finds its origins in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *Ex Parte Young* the issue before the Court was the validity of certain penalty provisions for violation of a Minnesota statute which set maximum railroad freight charges. Under the Minnesota statute a railroad violating the maximum freight provisions was subject to heavy penalties and its officers and directors were subject to possible imprisonment. There was no opportunity for preenforcement review of the validity of the statute and the only way to it was to violate its provisions and be subject to penalty provisions and possible imprisonment. The U.S. Supreme Court held the statute unconstitutional on its face. *Ex Parte Young,* 209 U.S. 123, 147, 28 S.Ct. 441, 448, 52 L.Ed. 714 (1908). The rationale of the Court's decision in *Ex Parte Young* was that a statute denies due process if the penalties for disobeying it are so severe that they effectively intimidate a party into not seeking judicial review. As the Court stated:

> It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights.

*Id.* at 147, 28 S.Ct. at 449.

Since *Ex Parte Young,* other cases have been decided upon a similar rationale. *See Oklahoma Operating Co. v. Love,* 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920). In *Love* an Oklahoma statute established a commission with authority to set the maximum rates for laundry work. The statute permitted the commission to impose a penalty of up to $500 per day for each day in which a laundromat charged rates higher than those permitted by the commission. As in *Ex Parte Young,* there was no provision for preenforcement review and the only way of challenging the validity of the statute was to ignore its prohibitions and be subject to its penalties. In finding the statute unconstitutional the Court adopted the *Ex Parte Young* rationale stating that:

> By boldly violating an order a party against whom it was directed may provoke a complaint; and if the complaint results in a citation to show cause why he should not be punished for contempt, he may justify before the Commission by showing that the order violated was invalid, unjust or unreasonable. If he fails to satisfy the Commission that it erred in this respect, a judicial review is opened to him by way of appeal on the whole record to the Supreme Court. But the penalties, which may possibly be imposed, if he pursues this course without success, are such as might well deter even the boldest and most confident.... Obviously a judicial review beset by such deterrents does not satisfy the constitutional requirements, even if otherwise adequate,....

*Id.* at 336–37, 40 S.Ct. at 340. It is important to note that, while the penalty provisions in *Love* were not mandatory, they were imposed by a nonjudicial tribunal before the action was reviewed in a court.

In both *Ex Parte Young* and *Love* the statutes did not provide for preenforcement review of the validity of an order. In *Ex Parte Young* the penalty provisions were mandatory and it was not a defense that a party asserted a good faith challenge to the validity of the statute. In *Love,* while the statutory penalties were not absolutely mandatory, they were imposed by the agency enforcing the order before any opportunity for review in a court. Moreover, it was no defense to the imposition of penalties that a person subject to the order contested its validity. For those reasons, the statutes did not satisfy due process.

The significance of these features can be seen in more recent decisions of the Supreme Court. For example, in *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the taxpayer petitioners challenged the constitutionality of § 7210 of the 1954 Internal Revenue Code which provided that any person subject to a subpoena who neglected to appear or produce books and accounts *"shall,* upon conviction thereof, be fined not more than $1,000, or imprisoned not more than one year or both...." *See Reisman,* 375 U.S. 440, 446 n. 5, 84 S.Ct. 508, 512 n. 5, 11 L.Ed.2d 459 (1964). The petitioners argued that the penalties for refusal to comply with the subpoena were so severe as to amount to a denial of due process. The Court found that the statute did not apply to situations where a witness appeared and interposed a good faith defense to a subpoena. Rather, its provisions applied only where a witness failed to appear or produce documents. The Court, in upholding the validity of the statute, noted that

> It is sufficient to say that noncompliance is not subject to prosecution thereunder when the summons is attacked in good faith.

*Reisman,* 375 U.S. 440 at 447, 84 S.Ct. 508 at 512. *See also, Dan J. Sheehan Company v. Occupational Safety and Health Review Commission,* 520 F.2d 1036 (5th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976) (good faith defense to imposition of retroactive penalties coupled with judicial review sufficient to sustain statute).

■ The decisions of the Supreme Court in *Ex Parte Young* and its progeny clearly establish that a person has a due process right to challenge the validity of an administrative order affecting his affairs without being forced to pay exorbitant penalties if the challenge is unsuccessful. *Ex*

*Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115 (2d Cir.1975). The rationale of *Ex Parte Young* and its progeny is that the imposition of severe penalties effectively denies a person subject to the penalties the right to a judicial review of the validity of an order and that such a denial of judicial review is a violation of due process. However, *Ex Parte Young* and its progeny also establish that a statute imposing penalties for noncompliance with an administrative order will be constitutional if it is a defense to the imposition of penalties that the party disobeying the administrative order interposed a good faith defense to the validity of the order. It follows that a person will not be intimidated into not seeking judicial review if he knows that good faith is a defense to the imposition of penalties.

To determine whether the punitive damages provisions of CERCLA and MERLA fall within the proscription of *Ex Parte Young* and its progeny, it is necessary for this court to examine both the statutory language and legislative history of the relevant statutory provisions. Specifically, the court must determine whether CERCLA and MERLA provide a sufficient defense to the imposition of punitive damages to satisfy the due process clause.[2]

### Due Process and CERCLA Punitive Damages Provision

■ In recent years the United States Supreme Court has emphasized that in determining the meaning of a statute the starting point is the language of the statute itself. *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983). Where the language of a statute is clear on its face there is no need to examine the legislative history of a statute.

**2.** The court would note that if the statute provided for preenforcement review of the EPA's order the constitutional problem raised by Reilly Tar would likely be cured. However, those courts that have considered the issue have generally concluded that an administrative order is not subject to immediate review. *See e.g., Lone*

*Pine Steering Committee v. EPA,* 22 Env't. Rep. Cas. (BNA) 1113 (D.N.J.1985); *Aminoil, Inc. v. EPA,* 599 F.Supp. 69, 71 (C.D.Cal.1984); *Earthline Co. v. Rin-Buc, Inc.,* 21 Env't. Rep. Cas. (BNA) 2161 (D.N.J.1984); *United States v. Outboard Marine Corp.,* 22 Env't. Rep. Cas. (BNA) 1124 (N.D.Ill.1984).

Section 9607(c)(3) of CERCLA provides that a person who fails:

> without sufficient cause to properly provide removal or remedial action ... *may be liable to the United States for punitive damages....*

*Id.* The first point to note about § 9607 is that a person may only be held liable for punitive damages if he does not have sufficient cause to disobey an order. A person with sufficient cause to resist an order may not, under any circumstances, be held liable for punitive damages under § 9607(c)(3). As for those persons who do not have sufficient cause to resist an order the statute provides that they *may* be liable for punitive damages. It is important to note that the statute does not say that a party who disobeys an order without sufficient cause "shall" be liable for punitive damages. Thus, even without an understanding of the precise contours of what constitutes "sufficient cause" to disobey an order, the plain language of the statute does not provide for mandatory penalties.

To determine whether there is sufficient flexibility in the punitive damages provision to satisfy the concerns of *Ex Parte Young* and its progeny, this court must attempt to determine what constitutes "sufficient cause" to disobey an order. The only court to squarely address the meaning of the "sufficient cause" language of § 9607(c)(3) found the punitive damages provision of CERCLA to be unconstitutional. *Aminoil, Inc. v. United States E.P.A.,* 599 F.Supp. 69 (C.D.Cal. 1984). In *Aminoil* the court enjoined the imposition of CERCLA's treble damages provision as a violation of the due process clause. In determining that the punitive damages provision of CERCLA violated due process, the court first noted the lack of any pre-accrual review of the administrative order. *Aminoil,* 599 F.Supp. 69, 73 (C.D.Cal.1984). The court then analyzed the "without sufficient cause" language of § 9607(c)(3). The court stated that while the penalty provisions would not be applied to one who had sufficient cause for noncompliance,

> Such a defense appears to be extremely limited. After examination of the legislative intent behind CERCLA, it appears that "sufficient cause" as used in the statute is to be narrowly construed.... "Sufficient cause" does not appear to apply to situations in which alleged responsible parties in good faith assert a reasonable defense that is ultimately rejected by the court.

*Aminoil,* 599 F.Supp. 69, 73. The *Aminoil* court's conclusion that the "sufficient cause" defense did not encompass a good faith defense to the proposed remedial action was critical to its conclusion that the punitive damages provision was unconstitutional.[3]

The basis of the *Aminoil* court's interpretation of the "sufficient cause" language was the legislative history of CERCLA. The only specific reference to the "without sufficient cause" language this court is aware of in the legislative history to CERCLA is found in the Senate debates. Senator Stafford, the author of the bill, stated his opinion of what would constitute sufficient cause for refusing to comply with an administrative order in the following colloquy:

> MR. SIMPSON. Under section 107(c)(3), punitive damages may be imposed only when the failure to take proper removal or remedial action upon order is "without sufficient cause." What is intended by the phrase "without sufficient cause"?
>
> MR. STAFFORD. We intend that the phrase "sufficient cause" would encompass defenses such as the defense that

---

**3.** It is a well established principle of statutory construction that where a court has a choice between interpreting a statute in a constitutional and unconstitutional manner, a court is bound to select that interpretation which upholds the statute constitutionally. This principle is especially true where the basis for interpreting the penalty provision of CERCLA in an unconstitutional manner is the legislative history of CERCLA and not the language of the statute. Thus, this court respectfully disagrees with the *Aminoil* court's interpretation of the "without sufficient cause" language of § 9607(c)(3).

the person who was the subject of the President's order was not the party responsible under the act for the release of the hazardous substance. It would certainly be unfair to assess punitive damages against a party who for good reason believed himself not to be the responsible party. For example, if there were, at the time of the order, substantial facts in question, or if the party subject to the order was not a substantial contributor to the release or threatened release, punitive damages should either not be assessed or should be reduced in the interest of equity. There could also be "sufficient cause" for not complying with an order if the party subject to the order did not at the time have the financial or technical resources to comply or if no technological means for complying was available.

*We also intend that the President's orders, and the expenditures for which a person might be liable for punitive damages, must have been valid. In particular, they must not be inconsistent with the national contingency plan* and must in the President's belief, have been required in order to protect the public health or welfare or the environment. Thus, *in deciding whether a person should be liable for punitive damages, we would expect the courts to examine the particular orders or expenditures from the fund to determine whether they were proper, given the standards of the act and of the national contingency plan,* taking into account the fact that a threat to the public was posed by the situation sought to be corrected. *If the orders or expenditures were not proper, then certainly no punitive damages should be assessed or they should be proportionate to the demands of equity.*

1 *Legislative History,* 770–771.

One interpretation of the remarks of Senator Stafford, which was adopted by the *Aminoil* court, holds that a party has "sufficient cause" to refuse to comply with an administrative order only if it was not responsible for the release of the hazardous waste or if it did not have the technical or economic ability to comply. *Aminoil,* 599 F.Supp. at 73. Such an interpretation, however, is not mandated by the legislative history. Senator Stafford specifically stated that in determining whether to award punitive damages

> We would expect the courts to examine the particular orders or expenditures from the Fund to determine whether they were proper, *given the standards of the act and of the national contingency plan....* If the orders or expenditures were not proper, then certainly no punitive damages should be assessed or they should be proportionate to the *demands of equity.*

1 *Legislative History* at 771. The reference to the national contingency plan is instructive since one of its requirements is that there be a means of assuring that remedial actions are cost-effective. 42 U.S.C. § 9605(7). Thus, Senator Stafford's comment, that courts could refuse to impose punitive damages because an order issued by an agency was not in accordance with the national contingency plan, can be interpreted to encompass a good faith challenge to the appropriateness (including cost effectiveness) of the proposed remedy.[4]

The requirement that proposed remedial actions be cost-effective is an integral part of the statutory scheme. 42 U.S.C. § 9605(7). It is designed to preserve the limited funds available in the Superfund and ensure that the maximum number of hazardous waste sites are cleaned up with the minimum amount of money. A central issue in Reilly Tar's dispute with the EPA is the cost-effectiveness of the remedy' which the EPA has ordered Reilly Tar to perform. It would completely defeat the purpose behind the cost effectiveness pro-

---

**4.** That conclusion is buttressed by Senator Stafford's remarks that if the orders were not proper, courts should not impose punitive damages or should reduce the amount of punitive damages as "the demands of equity" require. One could hardly say that it is equitable to impose punitive damages upon a party asserting a good faith defense to the validity of an agency order.

vision of CERCLA to hold Reilly Tar liable for punitive damages merely for asserting a good faith, albeit unsuccessful, challenge to the cost-effectiveness of the order. The effect would be virtually to nullify the § 9605(7) cost effectiveness provision.

■ It is clear that the punitive damages provision of CERCLA is not a mandatory penalty provision. Moreover, this court believes that a good faith defense to the validity of the EPA order is sufficient to avoid the imposition of punitive damages.[5] Such an interpretation is consistent with the statute's language as well as its legislative history. The central teaching of the *Ex Parte Young* line of due process decisions is that a person has a right to challenge the validity of an agency order affecting his affairs without being forced to pay exorbitant penalties. Because § 9607(c)(3) of CERCLA provides such a right to Reilly Tar, due process is satisfied.

*Due Process and MERLA Penalty Provisions*

■ Minn.Stat. § 115B.18(1) (1984) provides that:

Any person responsible for a release or threatened release from a facility of a pollutant or contaminant which presents an imminent and substantial danger to the public health or welfare or the environment or for a release or threatened release of a hazardous substance from a facility *shall forfeit and pay to the state a civil penalty in an amount to be determined by the court* of not more than $20,000 per day for each day that the person fails to take reasonable and necessary response actions....

*Id.* Section 115B.18(1) clearly provides that the court shall determine the amount, if any, of the penalty to be assessed for noncompliance with an administrative order. Moreover, § 115B.18(1) does not specify the time at which the penalty begins to accrue or the level of culpability required before penalties can be imposed. The obvious implication is that these matters are left to the sound discretion of the court.

In *United States v. Reserve Mining Co.,* 412 F.Supp. 705 (D.Minn.1976) the District Court for the District of Minnesota interpreted language almost identical to the penalty provision of Minn.Stat. § 115B.18(1). *See* Minn.Stat. § 115.071(3) (1984). In *Reserve,* the court examined Minnesota's request that the court impose penalties under § 115.071(3) which provided in part that:

Any person who violates any provision of chapters 115 or 116 ... *shall forfeit and pay to the state a penalty, in an amount to be determined by the court,* of not more than $10,000 per day of violation....

*Id.* The operative words of § 115.071(3) and § 115B.18(1) are nearly identical.

5. During oral argument on Reilly Tar's motion for a preliminary injunction, the court repeatedly questioned counsel on what would happen if Reilly Tar established at trial that the remedy which the EPA implemented through the use of Superfund money was not cost-effective. Could Reilly Tar avoid payment of that portion which was not cost effective? If not, what is the purpose of the requirement that remedial actions be cost-effective?

In the present case, the government came into court seeking a mandatory injunction requiring Reilly Tar to clean up a hazardous waste site. The government bears the burden of proving in this case that its remedy is appropriate and cost-effective. In other words, Reilly Tar has a right to a *de novo* determination of the appropriateness and cost-effectiveness of the government's remedy. It would be peculiar, indeed, to conclude that the government could now avoid review of the appropriateness and cost-effective-

ness of its proposed remedy by simply issuing an administrative order on the eve of trial.

The court believes that CERCLA should be interpreted to allow a responsible party to avoid payment of remedial expenses if the expenses are not shown to be cost-effective. However, such an interpretation may lead to an anomolous result. If CERCLA is so interpreted, responsible parties will be encouraged to resist agency orders because if a responsible party complies with an agency order there is no right to reimbursement from the government in the event it is later found that the order was not cost-effective. *Aminoil, Inc. v. United States E.P.A.,* 599 F.Supp. 69, 73–74 (C.D.Cal.1984). On the other hand, permitting a defense of cost-effectiveness would be perfectly consistent with the framework provided for enforcement actions where the government bears the burden of proving the cost-effectiveness of its proposed remedial action.

In determining whether to impose penalties upon Reserve Mining the court broke down Reserve Mining's violations into several categories. *United States v. Reserve Mining Co.,* 412 F.Supp. 705, 707 (D.Minn. 1976). The first category of violations for which the state sought penalties concerned Reserve's violation of Regulation WPC 15 concerning water quality and purity standards. In refusing to impose penalties the court noted that:

> Because Reserve, from the outset, has challenged the validity and applicability of WPC 15, imposition of penalties for the many violations of this regulation is not justified.

*Reserve Mining,* 412 F.Supp. 705, 707 (D.Minn.1976).

As to another category of violations—relating to air quality regulations—the court noted that they·were "of a lesser magnitude—not the kind of acts which normally justify the imposition of punitive damages." *Id.* The clear implication of the *Reserve* court's decision is that a good faith challenge to the validity of an agency order is sufficient to avoid the imposition of penalties. This court believes that the penalty provision of MERLA should be interpreted in the same manner as the *Reserve* court interpreted the penalty provisions found in § 115.071(3). By interpreting § 115B.18(1) to mean that a good faith defense to the validity of the RFRA is sufficient to avoid the imposition of severe penalties, this court avoids any constitutional difficulty and satisfies the due process concerns of *Ex Parte Young.*

■ The State of Minnesota has also moved this court for an order permitting it to amend its Complaint to set forth a cause of action under the Minnesota Environmental Response and Liability Act (MERLA), Minn.Stat. § 115B.01 *et seq.* (1984). Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its complaint with leave of court and "leave shall be freely given where justice so re-

quires." *Id.* This court has examined Reilly Tar's arguments in opposition to the State's motion and concludes that Reilly Tar has not shown that it will be prejudiced by permitting the State's amendment. For these reasons, this court will permit the State of Minnesota to amend its Complaint to state a cause of action under the Minnesota Environmental Response and Liability Act.

## CONCLUSION

An examination of the statutory language of CERCLA and its legislative history leads this court to conclude that Reilly Tar can challenge the validity of the EPA order in the enforcement action that will take place before this court [6] without being forced into paying exorbitant penalties if its challenge is rejected. The state statutory scheme leads this court to a similar conclusion. Therefore, the punitive damages provision of CERCLA, 42 U.S.C. § 9607(c)(3) as well as the penalty provision of MERLA, Minn.Stat. § 715B.18(1) (1984) do not fall within the ambit of *Ex Parte Young* and those provisions survive Reilly Tar's constitutional attack.

Because this court concludes that the statutory provisions under attack in the present case are constitutional, Reilly Tar has failed to meet the requirements for a preliminary injunction set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981). Moreover, this court will not issue a comparable order under the All Writs Act. 28 U.S.C. § 1651.

For the reasons set forth above, IT IS ORDERED that:

1. Reilly Tar's motion for a preliminary injunction is denied.

2. The State of Minnesota is granted leave to amend its Complaint.

---

6. The court would note that the EPA has recently reported to this court that it is going to use Superfund money to clean up at least part of the

Reilly Tar site. To the extent the EPA pays for the cleanup, the action before this court begins to resemble a cost recovery action.