812 F.2d 383
 25 ERC 1617, 55 USLW 2461, 17 Envtl.
L. Rep. 20,453
 SOLID STATE CIRCUITS, INC. Paradyne Corporation, Appellant,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Appellee.
SOLID STATE CIRCUIT, INC., Appellant,
Paradyne Corporation,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Appellee,
 Nos. 86-1592, 86-1593.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 10, 1986.
Decided Feb. 18, 1987.
 
 John Price, Springfield, Mo., for appellant.
 Sarah P. Robinson, Washington, D.C., for appellee.
 Before HEANEY and BOWMAN, Circuit Judges, and MORRIS S. ARNOLD,* District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 In this appeal, appellants challenge the district court's finding that the punitive damages provision of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Sec. 9607(c)(3), does not violate their due process rights. We affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 On March 6, 1985, after two months of negotiations, the United States Environmental Protection Agency (EPA) issued a clean-up order to Solid State Circuits, Inc. (Solid State) and Paradyne Corporation (Paradyne) pursuant to section 106(a) of CERCLA, 42 U.S.C. Sec. 9606(a). The order contained factual findings including: (1) from April, 1968, to October, 1973, Solid State conducted manufacturing operations in a leased building in Republic, Missouri; (2) Solid State used trichloroethylene (TCE) and a copper based plating solution in its operation, and stored the used chemicals in an unlined pit in the basement of a building at the site; (3) TCE and copper are harmful to humans; (4) in 1982, corporate ownership of Solid State was transferred to Paradyne; (5) recent soil and groundwater samples from the vicinity of the site show TCE and copper contamination; (6) the contamination poses a threat to the drinking water of Republic, Missouri, the aquifers underlying the site, and the health of humans and animals in the vicinity. The order concluded that Solid State's handling of the TCE and copper was the cause of the contamination and the chemicals posed an "imminent and substantial endangerment to the public health, welfare, or the environment." The order directed Solid State and Paradyne, as responsible parties, to obtain access to contaminated areas, to provide security at the facility, to submit a detailed clean-up plan to the EPA, and to notify the EPA within two days of their intent to comply with the order. No party contends that either applicable EPA regulations or CERCLA provided for an administrative hearing at which the findings of fact or conclusions of law in the order could have been challenged.
 
 
 3
 On March 14, 1985, Solid State and Paradyne filed suit in federal district court to enjoin the EPA from enforcing the order, from assessing daily penalties for failure to comply with the order, and from assessing treble damages for failing to comply with the order. As part of the suit, Paradyne attempted to raise, as defenses to the EPA's order, that it was not a responsible party under CERCLA and that even if it were, it could not gain access to the contaminated site under reasonable terms to perform required clean-up operations because it has no property interest whatsoever in the site. Paradyne and Solid State also challenged the constitutionality of the treble damage and fine provisions of CERCLA, 42 U.S.C. Sec. 9606(b) and Sec. 9607(c)(3), on the ground that the provisions deprived them of their due process rights to challenge the validity and applicability of the EPA's order without facing ruinous fines and penalties. See Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
 
 
 4
 On April 18, 1985, the EPA, pursuant to section 104 of CERCLA, 42 U.S.C. Sec. 9604, began the clean-up it had ordered Paradyne and Solid State to perform. The clean-up was completed by November of 1985.
 
 
 5
 On May 20, 1985, the EPA moved to dismiss the suit by Paradyne and Solid State. The EPA argued that the court had no jurisdiction to review the merits of an order issued pursuant to section 106 of CERCLA because the statute does not provide for pre-enforcement review of such orders. In addition, the EPA argued that since it had begun its own clean-up of the site, it would not seek to enforce its order or to collect daily penalties for noncompliance. Thus, the EPA argued that the court should dismiss the case because the issues whether to enjoin enforcement of the order or collection of daily penalties were moot, and because the issue whether to enjoin assessment of treble damages was not yet ripe inasmuch as the EPA can only assess such damages as part of a separate action in federal district court under CERCLA Sec. 107, and no such action had yet been brought.
 
 
 6
 The district court agreed it lacked subject matter jurisdiction to engage in pre-enforcement review of the merits of an order issued by the EPA pursuant to section 106 of CERCLA. Thus, the court refused to address the merits of Paradyne's and Solid State's defenses to the order. The court also agreed that the EPA's commencement of the clean-up rendered Paradyne's and Solid State's request for an injunction prohibiting the EPA from seeking to enforce its order or to collect penalties for non-compliance moot.[1] The court, however, found it had jurisdiction to consider the claim by Paradyne and Solid State relating to the constitutionality of that portion of CERCLA's statutory scheme subjecting them to treble damages for failing to comply with the EPA's order.
 
 
 7
 The court then proceeded to consider whether the constitutional claim was ripe for review, insofar as the decision to bring an action for treble damages lies within the discretion of the EPA, and the EPA had not yet decided whether to pursue such an action against Paradyne and Solid State. Applying Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the court found the issue "purely legal" and fit for determination. The court also found that the statutory scheme challenged by Paradyne and Solid State posed significant hardship due to the necessity of reporting the potential treble liability on public financial filings required by the SEC. Thus, the court found the constitutional claim ripe for review.[2]
 
 
 8
 Proceeding to the merits of the constitutional claim, the court held that there is no violation of due process in the application of the CERCLA statutory scheme, adopting the conclusions of recent opinions in Wagner Electric Corp. v. Thomas, 612 F.Supp. 736 (D.Kan.1985), and United States v. Reilly Tar & Chemical Corp., 606 F.Supp. 412 (D.Minn.1985) (holding that a party's reasonable belief in a valid defense to the merits of an EPA order precludes imposition of treble damages pursuant to CERCLA Sec. 107(c)(3)). Thus, the court refused to enjoin the EPA from seeking to assess treble damages against Paradyne and Solid State pursuant to section 107(c)(3) of CERCLA. Paradyne and Solid State appeal the district court's ruling only with respect to the due process issue.
 
 II. THE STATUTORY SCHEME OF CERCLA
 
 9
 Recognizing the grave consequences arising from delays in cleaning up hazardous waste sites, Congress gave the EPA authority to direct clean-up operations prior to a final judicial determination of the rights and liabilities of the parties affected. Thus, if the EPA has determined that a hazardous substance has been or is likely to be released at a facility, and has issued an order to the responsible party directing clean-up operations, it has several enforcement options available.
 
 
 10
 First, the EPA may bring an action in federal district court seeking an order directing compliance with its order using the contempt powers of the court as a sanction for non-compliance. See CERCLA Sec. 106(a), 42 U.S.C. Sec. 9606(a).[3] Second, it may bring an action in federal district court seeking to impose fines of up to $5,000 a day for non-compliance. See CERCLA Sec. 106(b), 42 U.S.C. Sec. 9606(b).[4] Finally, if the EPA determines that a release of a hazardous substance may pose an imminent and substantial danger to the public health or welfare and that the responsible parties will not properly respond, it may arrange for the required clean-up itself and pay for it using funds from the Hazardous Substance Response Trust Fund (Superfund) created as part of CERCLA. See CERCLA Sec. 104(a), 42 U.S.C. Sec. 9604(a) (authorizing the EPA to conduct clean-up); CERCLA Sec. 221, 42 U.S.C. Sec. 9631 (creating Superfund); CERCLA Sec. 111(a), 42 U.S.C. Sec. 9611(a) (authorizing the EPA to pay clean-up costs from the Superfund).[5]
 
 
 11
 Since Superfund money is limited, Congress clearly intended private parties to assume clean-up responsibility. In addition, it sought to ensure that responsible parties would not delay clean-up activities until the EPA felt it necessary to perform the required work itself. Thus, in addition to allowing the EPA to bring an action for actual costs incurred by the Superfund in conducting the clean-up, see CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a),[6] Congress established a cause of action allowing the EPA, in its discretion, to bring a claim in federal district court to recover up to three times the amount of any costs incurred by the Superfund from any person who is liable for a release or threatened release of a hazardous substance and who fails without sufficient cause to properly comply with the EPA's order. See CERCLA Sec. 107(c)(3), 42 U.S.C. Sec. 9607(c)(3).[7]
 
 III. ANALYSIS
 
 12
 Because neither CERCLA nor applicable EPA regulations or practice provides for a pre-enforcement hearing at which the merits of the EPA's order could be tested, see e.g., Wagner Seed Co. v. Daggett, 800 F.2d 310, 314-15 (2d Cir.1986) (finding district court without jurisdiction to conduct pre-enforcement review of merits of the EPA order), Paradyne and Solid State argue that the statutory scheme of CERCLA violates their right to due process by depriving them of any meaningful opportunity to test the validity of the EPA's order "without incurring the prospect of debilitating or confiscatory penalties." Brown & Williamson Tobacco Corp. v. Engman, 527 F.2d 1115, 1119 (2d Cir.1975), cert. denied, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976).
 
 
 13
 In essence, Paradyne and Solid State argue that upon receiving the EPA order they found themselves stuck between a rock and a hard place. They assert that, under the statutory scheme, if they had chosen to comply with the EPA's order and were later found to have a valid defense to liability, they would have been forced to bring an action against the responsible party in order to obtain reimbursement for the clean-up. If the responsible party could not have been located or determined or had turned out to be judgment proof, they would have been forced to bear the cost of a clean-up for which they were not liable.[8] On the other hand, if Paradyne and Solid State had refused to comply, they would have been exposed to the possiblity of treble liability under CERCLA Sec. 107(c)(3).[9] In addition, Paradyne and Solid State contend that even if the EPA did not bring an action for treble damages, they would still have had to carry the potential treble liability on all public financing disclosures for an indefinite period because, at the time the EPA issued its order, there was no statute of limitations on EPA cost recovery actions.[10] Paradyne and Solid State contend this "Hobson's choice" between compliance and potential treble liability effectively prevents a challenge to an EPA order.
 
 
 14
 The due process argument has its origins in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). That case establishes that a statutory scheme violates due process if "the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate [an affected party] from resorting to the courts to test the validity of the legislation." Id. at 209 U.S. 147, 28 S.Ct. at 448, 52 L.Ed. 724. It concludes that in such a situation "the result is the same as if the law in terms prohibited the [affected party] from seeking judicial construction of laws which deeply affect its rights." Id.
 
 
 15
 Paradyne and Solid State, however, acknowledge that the constitutional requirements of Ex Parte Young are met if the challenged statutory scheme may be interpreted so that no penalty is imposed if the challenging party has reasonable grounds to contest the validity or applicability of an administrative order. See Oklahoma Operating Co. v. Love, 252 U.S. 331, 338, 40 S.Ct. 338, 340, 64 L.Ed. 596, 599 (1920) (issuing permanent injunction restraining enforcement of penalties accruing during litigation "provided that it also be found that the plaintiff had reasonable gound to contest them" (emphasis added)); see also Reisman v. Caplin, 375 U.S. 440, 446-47, 84 S.Ct. 508, 512, 11 L.Ed.2d 459 (1964).
 
 
 16
 Expansion of the Ex Parte Young doctrine to preclude imposition of statutory penalties if the plaintiff has reasonable grounds to contest the validity or applicability of an administrative order is important in this case because the challenged treble damage provision of CERCLA provides:
 
 
 17
 If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President pursuant to section 9604 or 9606 of this title, such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action.
 
 
 18
 CERCLA Sec. 107(c)(3), 42 U.S.C. Sec. 9607(c)(3) (emphasis added).
 
 
 19
 Thus, this case presents the question whether the sufficient cause defense provided in CERCLA Sec. 107(c)(3) affords adequate protection against imposition of the treble damage penalty to allow a challenge to an EPA clean-up order as required by Ex Parte Young and its progeny.
 
 
 20
 Paradyne and Solid State argue that the sufficient cause defense provides adequate protection only if it is interpreted to encompass a subjective good faith belief in the invalidity or inapplicability of an EPA clean-up order. In support of their position, they point to Aminoil, Inc. v. United States, 646 F.Supp. 294 (C.D.Cal.1986) (Aminoil II ). In that case, the court stated:
 
 
 21
 [T]he phrase "sufficient cause" should be interpreted to mean a "good faith" defense. Under such an interpretation, plaintiffs are sufficiently protected against the threat of punitive damages under Sec. 9607(c)(3). Punitive damages may only be assessed where the Government proves that plaintiffs have refused to comply with the order in bad faith. For example, if the Government can prove that plaintiffs have challenged the merits of the order simply for the purpose of delay, punitive damages should be assessed. Consequently, the risk that plaintiffs would forego a valid challenge to the order would not offend Due Process principles.
 
 
 22
 Id. at 299.
 
 
 23
 Thus, Paradyne and Solid State contend that only by adopting an interpretation similar to that enunciated in Aminoil II can this Court find the treble damage provision constitutional.
 
 
 24
 The EPA, on the other hand, urges us to interpret sufficient cause as encompassing an objective standard arguing that:
 
 
 25
 As a federal agency, EPA must be presumed to act correctly, and ultimately review of the administrative order must be on an arbitrary and capricious standard. Thus, only a reasonable belief that the agency acted arbitrarily and capriciously in issuing the order would be sufficient cause for non-compliance.
 
 
 26
 Brief of Appellee at 31 n. 15.
 
 
 27
 The EPA cites Wagner Electric Corp. v. Thomas, 612 F.Supp. 736 (D.Kan.1985), as supporting an objective good faith standard. Wagner Electric construes the "reasonable grounds" language of Oklahoma Operating Co. v. Love, 252 U.S. at 338, 40 S.Ct. at 340, as requiring that "one must assert an objectively good faith challenge to [an] administrative action before one may invoke the protections of Ex Parte Young." Wagner Electric, 612 F.Supp. at 745.
 
 
 28
 As a matter of constitutional law, we believe that the label "objective" or "subjective" is not as important as the functional significance of the standard. To put it another way, to pass constitutional requirements, the standard must provide parties served with EPA clean-up orders a real and meaningful opportunity to test the validity of the order. See Ex Parte Young, 209 U.S. at 147, 28 S.Ct. at 448. At the same time, the standard must protect the government's interest in encouraging parties to conduct clean-ups promptly and in promoting settlements once the EPA has performed clean-ups itself so as to avoid using resources necessary to respond to threats posed by hazardous waste on litigation to replenish the Superfund. We are, therefore, convinced that "sufficient cause" as used in CERCLA Sec. 107(c)(3) may be constitutionally interpreted to mean that treble damages may not be assessed if the party opposing such damages had an objectively reasonable basis for believing that the EPA's order was either invalid or inapplicable to it.[11]
 
 
 29
 Under this standard, a court assessing the objective reasonableness of a party's challenge to a clean-up order must keep in mind that the EPA is presumed to have acted correctly, and its decision to issue such an order may be found erroneous only if it acted arbitrarily or capriciously. Thus, in order to establish the objective reasonableness of a challenge to an EPA clean-up order, a party must show that the applicable provisions of CERCLA, EPA regulations and policy statements, and any formal or informal hearings or guidance the EPA may provide, give rise to an objectively reasonable belief in the invalidity or inapplicability of the clean-up order. We note, however, that in some instances, CERCLA itself is silent or ambiguous, and the EPA has failed to promulgate regulations or to issue position statements that could allow a party to weigh in advance the probability that the clean-up order is valid or applicable.[12] Absent such guidance, it will also be difficult for a court to determine the reasonableness of a challenge to the order notwithstanding the presumption of validity an agency order enjoys.
 
 
 30
 In such instances, therefore, it would be patently unreasonable and inequitable for a court to require a challenging party to prove the reasonableness of its challenge to avoid imposition of treble damages. Thus, we hold that if neither CERCLA nor applicable EPA regulations or policy statements provides the challenging party with meaningful guidance as to the validity or applicability of the EPA order, Ex Parte Young and its progeny require that the burden rest with the EPA to show that the challenging party lacked an objectionably reasonable belief in the validity or applicability of a clean-up order.
 
 
 31
 Although shifting the burden may seem onerous, we agree with the Wagner Electric court that the EPA could greatly limit sufficient cause defenses by issuing regulations and policy statements and by providing for informal hearings that would enable a party to better determine the validity and applicability of an EPA order prior to the time it must decide whether to comply with a clean-up order or risk treble damages. By providing such guidance at an early stage, the EPA will best protect the interests of all concerned and promote faster more efficient clean-ups while making certain liability for clean-ups remains with those responsible. Accordingly, we affirm.
 
 
 
 *
 The Honorable Morris S. Arnold, United States District Judge, for the Western District of Arkansas, sitting by designation
 
 
 [1]
 We agree with the district court's decision that it lacked jurisdiction to review the merits of an EPA clean-up order prior to an attempt by the EPA to enforce it. See, e.g., Wagner Seed Co. v. Daggett, 800 F.2d 310, 314-15 (2d Cir.1986) (finding no pre-enforcement review); Wheaton Industries v. United States, 781 F.2d 354, 356-57 (3d Cir.1986) (same). The October, 1986, amendments to CERCLA confirm Congress' intent to preclude pre-enforcement review. See Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S. Code Cong. & Admin.News (100 Stat.) 1649-50 (to be codified at 42 U.S.C. Sec. 9613(h)). The relevant amendment states:
 (h) TIMING OF REVIEW.--No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 of the United States Code (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 121 (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 104, or to review any order issued under section 106(a), in any action except one of the following:
 (1) An action under section 107 to recover response costs or damages or for contribution.
 (2) An action to enforce an order issued under section 106(a) or to recover a penalty for violation of such order.
 (3) An action for reimbursement under section 106(b)(2).
 (4) An action under section 310 (relating to citizens suits) alleging that the removal or remedial action taken under section 104 or secured under section 106 was in violation of any requirement of this Act. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
 (5) An action under section 106 in which the United States has moved to compel a remedial action.
 Id.
 We also agree that because EPA began clean-up of the site on its own and indicated that it would not seek to enforce its order or to assess daily penalties, issues arising as a result of potential enforcement or daily penalties are moot.
 
 
 [2]
 We agree with the district court's holding on the ripeness issue. See Wagner Electric Corp. v. Thomas, 612 F.Supp. 736, 741 (D.Kan.1985) (finding issue ripe for review); Aminoil, Inc. v. United States, 599 F.Supp. 69, 72 (C.D.Cal.1984) (Aminoil I ) (same)
 
 
 [3]
 CERCLA Sec. 106(a) provides in relevant part:
 [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require.
 42 U.S.C. Sec. 906(a).
 
 
 [4]
 At the time the EPA issued its orders, CERCLA Sec. 106(b) provided:
 Any person who willfully violates, or fails or refuses to comply with, any order of the President under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined no more than $5,000 for each day in which such violation occurs or such failure to comply continues.
 The section has since been amended to include a "sufficient cause" defense. The provision now reads: "(1) Any person who, without sufficient cause, willfully violates * * *." Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S. Code Cong. & Admin.News (100 Stat.) 1628 (to be codified at 42 U.S.C. Sec. 9606(a)(1)).
 
 
 [5]
 At the time the EPA issued its order, CERCLA Sec. 104(a) provided authorization for the EPA to commence clean-up operations. It states:
 (1) Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, * * * which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance * * * at any time * * * or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment, unless the President determines that such removal and remedial action will be done properly by the owner or operator of the vessel or facility from which the release or threat of release emanates, or by any other responsible party.
 The recent Superfund amendments delete the requirement that the EPA determine that removal and remedial action will not be done properly by the owner, operator, or responsible party before taking action. The amendment places discretion with the EPA to perform the clean-up or to allow the responsible party to conduct the clean-up if it determines that the action will be done properly and promptly. See Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S. Code Cong & Admin.News (100 Stat.) 1618 (to be codified at 42 U.S.C. Sec. 9604(a)).
 CERCLA Sec. 221 creates the Hazardous Substance Response Trust Fund. It states:
 There is established in the Treasury of the United States a trust fund to be known as the "Hazardous Substance Response Trust Fund" (hereinafter in this part referred to as the "Response Trust Fund"), consisting of such amounts as may be appropriated or transferred to such Trust Fund as provided in this section.
 42 U.S.C. Sec. 9631.
 Finally, section 111(a) of CERCLA authorizes the EPA to pay clean-up costs out of the Fund. It provides:
 The President shall use the money in the Fund for the following purposes:
 (1) payment of governmental response costs incurred pursuant to section 9604 of this title.
 42 U.S.C. Sec. 9611(a)(1).
 
 
 [6]
 At the time the EPA issued its order, CERCLA Sec. 107(a) provided:
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 * * *
 shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
 42 U.S.C. Sec. 9607(a).
 
 
 [7]
 Section 107(c)(3) of CERCLA provides:
 (3) If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President pursuant to section 9604 or 9606 of this title, such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action. The President is authorized to commence a civil action against any such person to recover the punitive damages * * *.
 
 
 [8]
 For a discussion of some of the difficulties a private party may face in bringing a cost recovery action, see generally Note, Private Cost Recovery Under CERCLA 69 Minn.L.Rev. 1135 (1985)
 
 
 [9]
 Although coming too late to do them any good, the hardship posed by the dilemma Paradyne and Solid State supposedly faced upon being served with the clean-up order has been ameliorated significantly by the recent amendments to CERCLA. Section 106(b) of CERCLA has been amended to allow a person who receives and complies with a clean-up order a right of action against the Superfund for costs incurred in performing the required clean-up provided certain conditions are met. The amendment states:
 (2)(A) Any person who receives and complies with the terms of any order issued under subsection (a) may, within 60 days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest. Any interest payable under this paragraph shall accrue on the amounts expended from the date of expenditure at the same rate as specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of the Internal Revenue Code of 1954.
 (B) If the President refuses to grant all or part of a petition made under this paragraph, the petitioner may within 30 days of receipt of such refusal file an action against the President in the appropriate United States district court seeking reimbursement from the Fund.
 (C) Except as provided in subparagraph (D), to obtain reimbursement, the petitioner shall establish by a preponderance of the evidence that it is not liable for response costs under section 107(a) and that costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order.
 (D) A petitioner who is liable for response costs under section 107(a) may also recover its reasonable costs of response to the extent that it can demonstrate, on the administrative record, that the President's decision in selecting the response action ordered was arbitrary and capricious or was otherwise not in accordance with law. Reimbursement awarded under this subparagraph shall include all reasonable response costs incurred by the petitioner pursuant to the portions of the order found to be arbitrary and capricious or otherwise not in accordance with law.
 (E) Reimbursement awarded by a court under subparagraph (C) or (D) may include appropriate costs, fees, and other expenses in accordance with subsections (a) and (d) of section 1412 of title 28 of the United States Code.
 Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S. Code Cong. & Admin.News (100 Stat.) 1628 (to be codified at 42 U.S.C. Sec. 9606(a)(2)).
 Thus, we note that, in the future, parties wishing to avoid treble liability may apparently perform any required clean-up, with the assurances that if recovery is unavailable from a third party and they are not a responsible party, recovery may be had from the Superfund.
 
 
 [10]
 Recent amendments to CERCLA apparently now provide for a six-year statute of limitations on cost recovery actions and a three-year statute of limitations on claims for damages arising out of injury to or loss of natural resources. See Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499, 1986 U.S. Code Cong. & Admin.News (100 Stat.) 1647 (to be codified at 42 U.S.C. Sec. 9612(d))
 
 
 [11]
 We emphasize that the only issue properly before this Court is the constitutionality of CERCLA's treble damage provision. The question of the proper interpretation of that section as a matter of statutory construction is only before this Court insofar as it may be necessary to determine its constitutionality. In this regard, we reiterate the admonition of the district court in United States v. Reilly Tar & Chemical Corp., 606 F.Supp. 412 (D.Minn.1985), wherein it stated:
 It is a well established principle of statutory construction that where a court has a choice between interpreting a statute in a constitutional and unconstitutional manner, a court is bound to select that interpretation which upholds the statute constitutionally.
 Id. 606 F.Supp. 419 n. 3.
 As a result, absent a more fully developed record, we will not engage in the delicate matter of finally construing the statute; instead, we assume that in the future the EPA and the courts will construe the statute in a constitutional manner. Thus, we need only consider the most stringent standard that may be constitutionally applied to a party seeking to avoid imposition of treble damages under CERCLA Sec. 107(c)(3). As a matter of statutory construction, the courts or the EPA remain free to adopt a more liberal "subjective good faith construction."
 We note, however, without deciding the issue, that the legislative history of the recent CERCLA Amendments states:
 The phrase "without sufficient cause" is currently set forth as a defense to liability for treble damages in section 107(c)(3) of CERCLA. The government has argued and the courts have interpreted this phrase to mean that a party will not be liable for treble damages for failing to comply with an EPA order when the party has a reasonable good faith belief that it has a valid defense to that order. See Wagner Electric Corp. v. Thomas, [612 F.Supp. 736] No. 85-2212-0 (D.Kan. June 20, 1985); United States v. Reilly Tar & Chemical Corp., 606 F.Supp. 412, 421 (D.Minn.1985).
 To avoid potential unfairness that might arise from the limitation on the timing of review of section 106 orders, this amendment expressly extends the "sufficient cause" defense to the penalty provision in section 106. The amendment contemplates that the phrase "sufficient cause" will continue to be interpreted to preclude the assessment of penalties or treble damages when a party can establish that it had a reasonable belief that it was not liable under CERCLA or that the required response action was inconsistent with the national contingency plan. The court must base its evaluation of the defendant's belief on the objective evidence of the reasonableness and good faith of that belief. Given the importance of EPA orders to the success of the CERCLA program, courts should carefully scrutinize assertions of "sufficient cause" and accept such a defense only where a party can demonstrate by objective evidence the reasonableness and good faith of a challenge to an EPA order.
 The amendment also contemplates that courts will continue to interpret "sufficient cause" to encompass other situations where the equities require that no penalties or treble damages be assessed.
 H.R.Rep. No. 253(I) 99th Cong., 2d Sess. 82, reprinted in 1986 U.S. Code Cong. & Admin.News 2835, 2864.
 Thus, it appears from the last sentence of the quoted passage that Congress intended courts to remain flexible and to refuse to award the EPA punitive damages if to do so would be patently unjust in light of the public and governmental interests at stake. We fully expect that as the EPA and the courts face concrete cost recovery and treble damage cases, section 107(c)(3) of CERCLA will develop accordingly.
 
 
 [12]
 For example, in response to the Court's queries at oral argument regarding the EPA's position on who qualifies as a responsible party and on access issues such as those raised by Solid State and Paradyne, the EPA supplied the Court with a supplemental memorandum which stated in part:
 [T]he Court requested counsel for the Environmental Protection Agency (EPA) to furnish it with copies of any policy statements the Agency may have prepared to guide the Regional EPA offices when they intend to issue an administrative cleanup order under section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9606, against responsible parties who are not landowners or current lessees of the site to be cleaned up. Counsel has determined--through consultation with EPA's Office of General Counsel and Office of Enforcement and Compliance Monitoring--that no such policy statements exist at this time.