AMINOIL, INC., et al., Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
Defendants.

McAULEY OIL COMPANY,
etc., Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
Defendants.

Nos. Cv. 84–5853 Kn (Px),
Cv. 84–5863 Kn (Px).

United States District Court,
C.D. California.

Sept. 28, 1984.

Edward S. Renwick, Cynthia L. Burch, Hanna & Morton, Los Angeles, Cal., for plaintiffs Aminoil Inc., Atlantic Richfield Co., Getty Oil Co., and Union Oil Co. of Calif.

Pachter, Gold & Schaffer, Los Angeles, Cal., for plaintiff McAuley Oil Co.

Robert C. Bonner, U.S. Atty., Joseph F. Butler, Asst. U.S. Atty., Los Angeles, Cal., for Federal defendants.

John K. Van de Kamp, Atty. Gen., of State of Cal., Susan L. Durbin, Deputy Atty. Gen., Los Angeles, Cal., for State defendants.

## ORDER

KENYON, District Judge.

The Court, having heard argument from counsel on September 11, 1984, with respect to plaintiffs' motions for a preliminary injunction, and having considered the

papers filed thereon, including the additional briefing submitted in response to this Court's minute orders of September 11, 1984 and September 13, 1984, makes the following findings and order:

The Court makes no ruling with respect to McAuley Oil's request for a preliminary injunction concerning the federal access order. Since the state and federal governments can gain access to the site under state law, the issue of access under federal law is moot. The Court, therefore, is making no ruling as to whether the access issues raised by McAuley Oil are subject to pre-enforcement determination and, if so, whether McAuley Oil is likely to prevail under this Circuit's preliminary injunction tests. If a state appellate court reverses the lower court's decision with regard to the state preliminary injunction, or if the appellate court grants a temporary stay, this Court may then have to address these issues.

Since the federal access order is not before the Court at this time, the issue of pre-enforcement review is limited to the context of administrative orders which request alleged responsible parties to submit a response plan and to implement such a plan upon approval by the EPA. Plaintiffs have not argued that, absent the daily penalties and treble damages provisions, the lack of pre-enforcement review of such orders violates their constitutional rights. Rather, the issue of pre-enforcement review that is in dispute is the narrower question of Congress' intent with respect to review of this type of administrative order.

■ Pre-enforcement review of administrative orders requiring the submission of response plans and the implementation of such plans issued pursuant to the emergency provisions articulated in the last sentence of § 106(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9606(a), is not expressly prohibited by the statute. This Court finds, however,

that the structure of the statute, its legislative history and cases construing it, *see Block v. Community Nutrition Institute,* —— U.S. ——, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984), demonstrate that Congress did not intend to allow judicial review of such orders prior to the commencement of either an enforcement action under § 106(b), 42 U.S.C. § 9606(b), or a recovery action under § 107(c)(3), 42 U.S.C. § 9607(c)(3). Congress plainly gave the President authority to address situations endangering "public health and welfare and the environment," 42 U.S.C. § 9606(a), and such authority necessitates broad flexibility in promptly and effectively responding to the emergency. *See United States v. Reilly Tar & Chemical Corp.,* 546 F.Supp. 1100, 1112 (D.C.Minn.1982). Allowing an alleged responsible party to challenge the merits of the § 106(a) administrative order prior to an enforcement or recovery action would handcuff the Environmental Protection Agency (EPA) by delaying effective responses to emergency situations. Congress could not have intended this contradictory scheme. In fact, the legislative history of CERCLA indicates that courts should not engage in premature analysis of issues lying within the expertise of the EPA, including such issues as whether an emergency exists and, if so, whether the particular response action is necessary and proper.

> [E]mergency action will often be required prior to the receipt of evidence which conclusively establishes an emergency. Because delay will often exacerbate an already serious situation, the bill authorizes the Administrator to take action when an imminent and substantial endangerment may exist.

H.R.Rep. No. 96–1016, Part I, 96th Cong., 2nd Sess. 28, *reprinted in* [1980] U.S.Code Cong. & Ad.News 6119, 6131. Thus, to the extent that pre-enforcement review of the merits of the administrative order is sought, this Court lacks jurisdiction to hear the arguments raised by plaintiffs.[1]

---

**1.** This Court is cognizant of the limited pre-enforcement review allowed by the Northern District of Ohio in *J.V. Peters & Co. v. Ruckelshaus,* 584 F.Supp. 1005, 20 E.R.C. 2222 (D.C.1984).

■ Contrary to the arguments alluded to above, for which this Court lacks subject matter jurisdiction, the issues of the daily penalties, 42 U.S.C. § 9606(b), and the treble damage provision, 42 U.S.C. § 9607(c)(3), do not involve the merits of the particular administrative order at issue here. Rather, these penalty provisions raise a controversy involving the constitutionality of the statutory scheme. This Court, therefore, has jurisdiction over this controversy arising under CERCLA pursuant to § 113(b), 42 U.S.C. § 9613(b), provided that the controversy is ripe for review. Under the test articulated by the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the constitutional challenges to the daily penalty and treble damage provisions are ripe for review. Whether these sanctions deny plaintiffs their due process rights is a "purely legal" question that is fit for judicial determination. *Id.* at 149, 87 S.Ct. at 1515. Further, the threat of statutory sanctions has a direct and immediate impact on whether plaintiffs will comply with the administrative order. *Id.* at 152, 87 S.Ct. at 1517. Unlike the situation presented to the Third Circuit in *West Penn Power Co. v. Train*, 522 F.2d 302 (1975), where plaintiff did not claim "that it *has* been denied due process", *id.* at 311 (emphasis in original), in this case plaintiffs are claiming that the effect of the sanctions is to presently deny them their due process rights because it is coercing plaintiffs into foregoing their legal challenge to the administrative order. If this Court were to withhold its consideration of the issue, plaintiffs will suffer the hardship of having to make a decision that may foreclose their access to a legal forum without the aid of a judicial determination clarifying the constitutionality of the parameters within which such a decision must be made. *Id.* 387 U.S. at 149, 87 S.Ct. at 1515.

■ In deciding whether this Court should preliminarily enjoin the federal government from imposing the daily penalties and the treble damage provision of CERCLA, this Court must determine whether plaintiffs have met their burden of proof under either of the tests set forth by the Ninth Circuit. Under the first test, the Court is instructed to consider the following factors: (1) whether the moving party will suffer irreparable injury if injunctive relief is not granted, (2) the probability of success on the merits, (3) whether, in balancing the equities, the nonmoving party is harmed more by the injunction than the moving party is helped, and (4) whether granting the injunction is in the public interest. *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir.1970), *aff'd*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). More recently, the Ninth Circuit has articulated an alternative test which requires the moving party to meet the burden of demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86 (9th Cir.1975); *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984). These two strands of this alternative test are not separate, but represent the "outer reaches of 'a single continuum.'" *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980), *quoting Benda v. Grand Lodge of International Association of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

Before applying the preliminary injunction tests to the facts presented, however,

The Court notes that *J.V. Peters* did not involve a § 9606(a) administrative order. Rather, that court addressed a conclusory challenge to a response action EPA was planning to implement. In any event, this Court questions whether federal courts should engage in a preliminary "rational basis" analysis, at least in situations involving § 9606(a) administrative orders requiring alleged responsible parties to submit and then implement a response plan. To the extent, however, that such review may be available, plaintiffs have failed to demonstrate that EPA's findings and order lack a rational basis.

a brief overview of the applicable provisions of CERCLA is helpful. CERCLA was enacted by Congress in response to growing concern about the severe environmental and public health effects resulting from improper handling and disposal of hazardous wastes. In responding to a hazardous waste situation, CERCLA provides the EPA with three alternatives:

(1) EPA may clean up the site themselves using Superfund money as provided for in 42 U.S.C. § 9631 and seek recovery from responsible parties for the cost incurred under 42 U.S.C. § 9607;

(2) EPA may seek injunctive relief under 42 U.S.C. § 9606(a);

(3) EPA may issue an administrative order under 42 U.S.C. § 9606(a) ordering the responsible parties to clean up the site, if such order is necessary to protect public health and welfare and the environment.

Pursuant to § 9606(a), EPA issued an administrative order directing plaintiffs to submit a plan to clean up the site and then to implement such plan. This order became effective August 10, 1984. This Court, therefore, is concerned with the provisions of CERCLA only insofar as they relate to an administrative order issued by EPA pursuant to § 9606(a).

A responsible party, defined in § 9601(20)(A) as an owner or operator of a facility where hazardous wastes have been deposited, may refuse to comply with the administrative order. If the responsible party so refuses, or otherwise fails to comply with the order, it may, in an action brought by EPA to enforce the order, be fined an amount not to exceed $5,000 for each day its failure or refusal continues. 42 U.S.C. § 9606(b). Nothing in the statute precludes EPA from waiting an extended period of time before bringing an enforcement action. If the alleged responsible parties unsuccessfully challenge the administrative order in the enforcement action, the daily penalties will have accrued between the time of the responsible parties' noncompliance with the order and the actual enforcement proceeding. Alternatively, if EPA chooses not to enforce the order and instead cleans up the site itself, the responsible parties may be held liable for punitive damages up to three times the amount of the clean-up cost incurred by EPA, 42 U.S.C. § 9607(c)(3). Section 9607(c)(3) provides for treble damages for any violation of § 9606, including the failure to comply with an administrative order. CERCLA does not provide for a judicial or administrative hearing prior to the accrual of the aforementioned sanctions.

■ This Court recognizes that the penalty provisions of § 9606(b) and § 9607(c)(3) would not apply to a party who could demonstrate that "sufficient cause" existed for noncompliance with a § 9606(a) administrative order. Such a defense can be raised at either the § 9606 enforcement action or the § 9607 recovery action. However, such a defense appears to be extremely limited. After examination of the legislative intent behind CERCLA, it appears that "sufficient cause" as used in the statute is to be narrowly construed. In the Senate debate of CERCLA, Senator Stafford, who introduced the bill, described this defense in the following terms:

We intended that the phrase "sufficient cause" would encompass defenses such as the defense that the person who was the subject of the President's order was not the party responsible under the Act for the release of the hazardous substance.... There could also be "sufficient cause" for not complying with the order if the party subject to the order did not at the time have the financial or technical resources to comply or if no technological means for complying was available....

126 *Cong.Rec.* at 30986 (Nov. 24, 1980). "Sufficient cause" does not appear to apply to situations in which alleged responsible parties in good faith assert a reasonable defense that is ultimately rejected by the Court.

■ Additionally, if the alleged responsible parties choose to comply with the administrative order under protest, there

does not appear to be an adequate remedy at law for such parties to seek reimbursement from the federal government should it later be found that the administrative order was arbitrary or otherwise inconsistent with the law. This Court requested additional briefing on this point and no party was able to demonstrate that a sufficient reimbursement action would be available.

In approaching plaintiffs' probability of success on their due process challenge, the Supreme Court has instructed that three distinct factors should be considered: (1) the private interest at stake, (2) the risk of erroneous deprivation through the present procedures, and (3) the government and public interest at stake. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Generally, notice and a hearing prior to the government's action is the constitutional prerequisite. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In extraordinary or emergency situations, however, due process may only require a hearing after the government action is taken. *Mathews,* 424 U.S. at 349, 96 S.Ct. at 909. In the case at bar, this Court must weigh: (1) plaintiffs' interest in seeking judicial review of the administrative order without the deterrent effect of significant sanctions if they are ultimately unsuccessful, (2) the risk that plaintiffs may be coerced into complying with the administrative order and be precluded from asserting what may have been meritorious defenses, and (3) the government's and public's interest in addressing emergency hazardous waste situations promptly and effectively.

■ The private interest at stake rests on the fundamental due process requirement of an opportunity to be heard. *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). It is an opportunity which must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Specifically, the private interest before this Court is the due process infringe-

ment arising from the § 9606(b) daily penalties and the § 9607(c)(3) assessment of treble damages.

■ Seventy-six years ago, the Supreme Court addressed a statutory scheme that assessed penalties for noncompliance in the landmark case of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In that case, maximum rail rates were established by state law and no opportunity was provided to challenge the validity of those rates except at the risk of incurring heavy penalties and criminal liability. The Court held that statutory provisions "imposing such enormous fines and possible imprisonment as a result of an unsuccessful effort to test the validity of the laws themselves, are unconstitutional on their face, without regard to the question of the insufficiency of those rates." *Id.* at 148, 28 S.Ct. at 449. The Court gave further clarification of this due process limitation in *St. Louis, Iron Mountain and Southern Railway Co. v. Williams,* 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919).

[I]mposition of severe penalties as a means of enforcing a rate ... is in contravention of due process of law, where no adequate opportunity is afforded ... for safely testing in an appropriate judicial proceeding, the validity of the rate ... before any liability for the penalty attaches. *Id.* at 64–65, 40 S.Ct. at 72. Where such an opportunity is afforded and the rate is adjudged valid or the carrier fails to avail itself of the opportunity [to contest the validity], it is then admissible, so far as due process is concerned for the state to enforce adherence to the rate by imposing penalties for deviation from it. [Emphasis added.]

*Id.* at 65, 40 S.Ct. at 72. *See also Oklahoma Operating Co. v. Love,* 252 U.S. 331, 336–37, 40 S.Ct. 338, 340, 64 L.Ed. 596 (1919) ("But the penalties which may possibly be imposed, if he pursues this course without success, are such as might well deter even the boldest and most confident.... Obviously a judicial review beset by such deterrents does not satisfy the constitutional requirements....") More

recently, the Second Circuit relied on this early line of cases in *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115 (1975), and stated:

> [O]ne has a due process right to contest the *validity* of a legislative or administrative order affecting his affairs without necessarily having to face ruinous penalties if the suit is lost. The constitutional requirement is satisfied by a statutory scheme which provides an opportunity for testing the validity of statutes or administrative orders without incurring the prospect of debilitating or confiscatory penalties.

*Id.* at 1119 (emphasis in original). The court ultimately rejected the due process challenge because, unlike the case presented here, the legality of the administrative order had already been determined. *Id.* at 1120. Also, the Supreme Court had previously upheld the constitutionality of the penalties at issue in *Brown & Williamson.* *Id.*

The daily penalty and treble damage scheme set forth in CERCLA clearly falls within the scope of this due process limitation. No opportunity is provided for a hearing involving the alleged responsible parties prior to the issuance of the administrative order. More importantly, no procedure is provided through which an alleged responsible party promptly could challenge the validity of the administrative order or the assessment of penalties.[2] These parties are left to await an enforcement or recovery action, which may occur at some indefinite time in the future. In the meantime, the daily penalties continue to accrue. Furthermore, no clear right exists for these alleged responsible parties to comply with the administrative order and then challenge its validity and seek reimbursement from the government. The threat of excessive penalties and treble damages may appear so debilitating to alleged responsible parties that compliance with the administrative order is the only feasible alternative. As such, this scheme clearly falls within the due process proscription articulated by the Supreme Court in *Wadley Southern Railway Co. v. Georgia,* 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1915). "[T]hat right [to judicial review] is merely nominal and illusory if the party affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." *Id.* at 661, 35 S.Ct. at 217. Hence, the private interest at stake here is the valued right to a fair hearing unencumbered by the chilling effect of excessive sanctions if one were to obtain such a hearing and lose on the merits.

Plaintiffs will be erroneously deprived of their response costs and a hearing on the merits if they succumb to the coercive effects of excessive sanctions and, in so doing, forego challenging the order with a defense that would have been successful. A serious risk that plaintiffs will erroneously lose their property interest in the funds expended in complying with the order must be included in the *Mathews* calculus.

The government's interest in the threat of significant sanctions also deserves serious consideration. By creating an emer-

---

2. The Court takes note of the fact that both the Clean Air Act, 42 U.S.C. § 7401 et seq. and the Surface Mining Control & Reclamation Act of 1977, 30 U.S.C. § 1201 et seq., provide the alleged responsible party with a hearing in those instances of alleged noncompliance with the statute. Section 7420(b)(4)(B) of the Clean Air Act allows the party against whom noncompliance penalties are sought to submit a petition within forty-five days after the issuance of a noncompliance notice challenging the notice of noncompliance. The Administrator then must provide petitioner with a hearing on the record to determine the validity of the challenge. Similarly, 30 U.S.C. § 1268(b) of the Surface Mining Act provides that a civil penalty shall be assessed for violations of the act only after the person charged with a violation has been given an opportunity for a public hearing. *See B & M Coal Corp. v. Office of Surface Mining Reclamation and Enforcement,* 531 F.Supp. 677 (S.D.Ind. 1982). Though not dispositive of the issue of due process in the case at bar, it is interesting that two other environmental statutes have made provision to address due process requirements, whereas the language of CERCLA is silent on the point.

gency administrative mechanism in § 9606(a) to direct the alleged responsible parties to plan and conduct the clean-up operations, Congress was clearly unwilling to fund all emergency response actions with Superfund resources. In order to limit the expenditure of these resources to those situations in which such funds are most needed, namely, when responsible parties cannot be located or cannot afford the costs of clean-up, Congress needed to encourage responsible parties with sufficient financial capabilities to begin clean-up operations in emergency situations immediately. The Supreme Court has made clear that the fiscal burdens placed on the government is a legitimate concern in due process analysis. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Without the threat of daily penalties or treble damages, responsible parties would have the incentive not to comply with the administrative order, thereby delaying the payment of costs for which Congress has determined they should be held liable.

In weighing these three *Mathews* factors, this Court concludes that plaintiffs are likely to succeed in showing that the present scheme violates their due process rights. Although the government's interest in handling emergency waste situations in an efficacious manner is significant, this Court is not convinced that this interest could not be addressed through a scheme that nevertheless provides the most rudimentary elements necessary to satisfy due process. Under the present scheme set forth in CERCLA, no attempt is made to protect an alleged responsible party's due process rights in emergency situations. In so doing, CERCLA creates a substantial risk that these alleged responsible parties will erroneously be deprived of significant protected interests.

Plaintiffs also confront the distinct possibility of irreparable injury. If they are coerced into complying with the administrative order, it appears likely that they will lose all legal recourse to challenging the government's actions. Similarly, plaintiffs have demonstrated that the balance of hardships tips sharply in their favor. The

state and federal governments apparently are willing and prepared to go forward with the clean-up themselves, funded by federal Superfund resources. Thus, the harm to the government appears to be minimal in this instance, especially given their § 9607 right to seek reimbursement from the responsible parties. The harm to the plaintiffs is the significant threat to their due process rights. This Court finds, therefore, that plaintiffs have met their burden under this circuit's preliminary injunction tests.

Under the present statutory and regulatory scheme, defendants are hereby enjoined from assessing daily penalties pursuant to § 106(b), 42 U.S.C. § 9606(b), or the treble damage provision of § 107(c)(3), 42 U.S.C. § 9607(c)(3).

Counsel for the government is requested to prepare proposed findings of fact and conclusions of law consistent with all of the findings and rulings contained in this order by October 12, 1984. Duplicate copies should be provided for each case.