AMINOIL, INC., et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

McAULEY OIL COMPANY, etc., Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.

Nos. CV 84–5853–KN (Px), CV 84–5863–KN (Px).

United States District Court, C.D. California.

June 30, 1986.

Thomas E. Harvey, Fullerton, Cal., for plaintiff McAuley Oil Co.

Edward S. Renwick, Cynthia L. Burch, Hanna and Morton, Los Angeles, Cal., for plaintiffs Atlantic Richfield Co., Phillips Oil Co., Shell Oil Co., Texaco, Inc., Union Oil Co.

Robert C. Bonner, U.S. Atty., Joseph F. Butler, Asst. U.S. Atty., Los Angeles, Cal., F. Henry Habicht II, Asst. Atty. Gen., George B. Henderson, Atty., Land and Natural Resources Div., Dept. of Justice, Washington, D.C., Joseph Freedman, Office of Gen. Counsel, U.S.E.P.A., Washington, D.C., for Federal defendants.

## ORDER

KENYON, District Judge.

The Court, having heard oral argument from counsel with respect to the parties' cross motions for summary judgment, and having considered the papers filed thereon, HEREBY ORDERS THAT both parties motions are GRANTED IN PART AND DENIED IN PART.

## FACTUAL BACKGROUND.

Congress enacted the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), [42 U.S.C. § 9601, et seq. in response to growing concern over the severe environmental and public health effects arising from improper handling and disposal of hazardous waste. CERCLA provides the Environmental Protection Agency ("EPA") with three alternatives:

(1) EPA may clean up the site itself using Superfund money pursuant to 42 U.S.C. § 9631 and then seek recovery from responsible parties for the cost incurred under 42 U.S.C. § 9607;

(2) EPA may seek injunctive relief under 42 U.S.C. § 9606(a);

(3) EPA may issue an administrative order under 42 U.S.C. § 9606(a) ordering the responsible parties to clean up the site, if such order is necessary to protect public health and welfare and the environment.

Pursuant to § 9606(a), EPA issued an administrative order directing plaintiffs to develop and implement a plan to clean up hazardous wastes at the McColl site. The order became effective August 10, 1984.

A responsible party, defined in § 9601(20)(A) as an owner or operator of a facility where hazardous wastes have been deposited, may refuse to comply with the administrative order. If the responsible party so refuses, or otherwise fails to com-

ply with the order, it may be subject, in an enforcement action brought by the EPA, to daily penalties up to $5,000.00 for each day its failure or refusal continues. 42 U.S.C. § 9606(b). Alternatively, the EPA may choose not to enforce its administrative order and instead clean up the site itself. The EPA may then, pursuant to 42 U.S.C. § 9607, institute a recovery action against the responsible party and seek both clean-up costs incurred as well as punitive damages up to three times the amount of the clean-up costs.

Subsequent to the issuance of the administrative orders, plaintiffs filed this action challenging both the validity of the administrative order and the constitutionality of the CERCLA penalty provisions (42 U.S.C. §§ 9606(b) and 9607(c)(3). On September 11, 1984, the Court heard argument with respect to plaintiffs' motion for a preliminary injunction to enjoin enforcement of §§ 9606 and 9607. The Court held in *Aminoil, Inc. v. United States E.P.A.*, 599 F.Supp. 69, 71 (C.D.Cal.1984) that to the extent that pre-enforcement review of the merits of the administrative orders was sought, the Court lacked jurisdiction to hear the arguments raised by plaintiffs.

With respect to the enforcement of §§ 9606(b) and 9607, however, the Court found that plaintiffs had shown a likelihood of success on the merits and a possibility of irreparable harm. Accordingly, the Court granted a preliminary injunction prohibiting the enforcement of these provisions.

Plaintiffs now move for partial summary judgment, asserting that the potential imposition of daily penalties and/or punitive damages as threatened here violates both plaintiffs' First Amendment Right to Petition and plaintiffs' Due Process Rights. In the alternative, plaintiffs seek a declaratory judgment providing that their reasons for refusing to comply with the administrative order constitute "sufficient cause" as provided in § 9607(c)(3).

Contemporaneous with plaintiffs' motion, defendants move for summary judgment. Defendants argue that § 9607 is constitutional when interpreted to preclude the imposition of damages upon the showing of a good faith and reasonable defense.

With respect to § 9606(b), defendants state that they will not attempt to assess any daily penalties. Consequently, the question of whether § 9606(b) is being applied unconstitutionally to plaintiffs is moot and will not be considered by the Court.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted provided there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. To the extent that the parties' motions here concern the constitutional application of § 9607(c)(3) and the Court's jurisdiction to render a declaratory judgment as requested by plaintiffs, the Court finds that there is no genuine issue as to any material fact. Therefore, summary adjudication of these issues is appropriate.

LIABILITY FOR PUNITIVE DAMAGES PURSUANT TO 42 U.S.C. § 9607(c)(3) and PLAINTIFFS' DUE PROCESS RIGHTS.

§ 9607(c) specifically provides that treble damages may be assessed against a party who, "without sufficient cause" fails to comply with an administrative order issued pursuant to CERCLA. Specifically, the statute provides in part:

If any person who is liable for a release or threat of release of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President pursuant to section 9604 or 9606 of this title, such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action.

The type of due process one is entitled to is determined under the three part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): (1) the private interest at stake, (2) the risk of erroneous deprivation through the

present procedures, and (3) the government and public interest at stake.

The private interest here is based on plaintiffs' opportunity to be heard at a meaningful time and in a meaningful manner. Specifically, it is plaintiffs' right to challenge the merits of the administrative order without the unreasonable threat of punitive damages. Plaintiffs argue that the threat of punitive damages may force them to forego their challenge and comply with the EPA's administrative order.

The Court's previous order cited language from *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In that case, no opportunity had been provided to challenge maximum rail rates except at the risk of incurring heavy penalties and criminal liability. The Court held that statutory provisions "imposing such enormous fines and possible imprisonment as a result of an unsuccessful effort to test the validity of the laws themselves, are unconstitutional on their face, without regard to the question of the insufficiency of those rates." *Id.* at 148, 28 S.Ct. at 449. See *Aminoil*, supra, 599 F.Supp. at 74, citing *St. Louis, Iron Mountain and Southern Railway Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919).

The Court also cited the recent Second Circuit opinion in *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115 (2d Cir.1975) in which the court stated:

> [O]ne has a due process right to contest the *validity* of a legislative or administrative order affecting his affairs without necessarily having to face ruinous penalties if the suit is lost. The constitutional requirement is satisfied by a statutory scheme which provides an opportunity for testing the validity of statutes or administrative orders without incurring the prospect of debilitating or confiscatory penalties.

*Id.* at 1119 (Emphasis in Original).

Defendants' first contention is that even in the absence of pre-enforcement review the Supreme Court has upheld penalty provisions where a reasonable good faith defense could be asserted. Defendants claim that the principles set forth in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) are determinative of the constitutionality of § 9607(c)(3). The *Reisman* Court upheld § 7210 of the 1954 Internal Revenue Code which provided that one who "neglected" to appear after being duly summoned by the Internal Revenue Service, ("IRS"), would, after conviction, be subject to fine or imprisonment. The Court held that the leading cases of *Young*, supra, and *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920), were not applicable because the statute on its face did not apply "where the witness appears and interposes good faith challenges to the summons." *Id.* 375 U.S. at 447, 84 S.Ct. at 512.

The *Reisman* opinion established a "good faith" defense for one who challenged an I.R.S. summons. However, it did not expressly require that the summoned party also provide an objectively reasonable defense as defendants suggest § 9607(c)(3) requires.

Defendants argue that the Court's previous order failed to take into account recent appellate cases which show that the rule of *Ex Parte Young* can apply only to legislative schemes in which penalties are mandatorily imposed upon those who exercise their right to a day in court.

In *Union Electric Co. v. Environmental Protection Agency*, 593 F.2d 299 (8th Cir. 1979), the court reversed the District Court's stay of the EPA's enforcement action pursuant to § 111(b) of the Clean Air Act Amendments of 1977, 42 U.S.C. § 7413(b)(2)(B). The court stated:

> We do not believe *Young* [*Ex Parte Young*, supra,] to be applicable here. Union Electric has an opportunity to test the validity of the Missouri Implementation Plan without necessarily incurring confiscatory fines and penalties. [citation omitted]. The Administrator of the EPA ... has two alternatives. He can either seek injunctive relief or can seek to impose civil or criminal penalties. We should not anticipate what the Administrator will seek in advance of his deci-

sion. Thus, it cannot be said that confiscatory fines and penalties will necessarily be incurred. Indeed, the Administrator apparently feels, in this case, that he has a third alternative—that of staying enforcement until the resolution of Union Electric's variance request.

*Id.* at 306.

It is unclear whether the *Union Electric* court would have upheld the potential assessment of penalties if the Administrator had not stayed its own enforcement proceeding. Moreover, the *Union Electric* court did not address what Due Process protection Union Electric was entitled to against the accrual of penalties while it sought a variance.

Defendants also cite the Ninth Circuit opinion in *United States v. Pacific Coast European Conference,* 451 F.2d 712 (9th Cir.1971). In *Pacific,* the United States sued to assess statutory penalties against defendants for use of unlawful dual-rate shipping contracts. The court addressed the issue of whether defendants could be subject to statutory penalties while they were testing the validity of the Federal Maritime Commission's Order. The court, citing *Wadley Southern Railway Company v. Georgia,* 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1915), (See *Aminoil,* supra, at 75) noted that defendants had "promptly and vigorously" challenged the validity of the Commission's order and the statute on which it was based, and that this was the "precise sort of case" considered in *Wadley.*

The court also found that defendants'

> right to test the validity of the Act and Commission order free from the risk of statutory penalties must be judged, not by this court's after-the-fact determination, but by whether defendants mounted a substantial attack upon the validity of the statute and order. We hold that they did.

451 F.2d at 719.

The *Pacific* court did not define the term "substantial attack;" however, one could argue that it means a challenge asserted promptly and in good faith.

The risk of an assessment of punitive damages arises from a party's refusal to comply with the administrative order "without sufficient cause." Consequently, the interpretation of the phrase, "without sufficient cause," determines how debilitating the threat of treble damages may be on plaintiffs in deciding whether to comply with the administrative order.

As this Court previously stated, there is no opportunity for plaintiffs to seek judicial review of the validity of the administrative order prior to the commencement of an enforcement action by the Government. *Aminoil,* supra, 599 F.Supp. at 75. Therefore, the decision not to comply with the order may place a substantial risk on plaintiffs. In the Court's previous Order, the Court stated that "[t]he threat of excessive penalties [pursuant to § 9606] and treble damages may appear so debilitating to alleged responsibility parties that compliance with the administrative order is the only feasible alternative." *Id.*

Defendants argue that § 9607(c) should be interpreted to provide that punitive damages may be assessed only when plaintiffs have not presented a good faith and "reasonable defense." However, as shown above, the authority cited does not necessarily call for such an interpretation. Moreover, the risk of an erroneous deprivation would be substantial if an objective standard were used in determining the "reasonableness" of plaintiffs' position. What may be considered reasonable by one court may be found unreasonable by another. The use of an objective reasonableness standard might make the risk of being exposed to treble damages in excess of dollars too extreme to allow a challenge the EPA's order. Plaintiffs could foreseeably forego a meritorious challenge in the face of such penalties.

As previously recognized by this Court, the defendants' interest in the threat of significant sanctions deserves serious consideration.

By creating an emergency administrative mechanism in § 9606(a) to direct the alleged responsible parties to plan and con-

duct the clean-up operations, Congress was clearly unwilling to fund all emergency response actions with Suprefund resources. In order to limit the expenditure of these resources to those situations in which such funds are most needed, namely, when responsible parties cannot be located or cannot afford the costs of clean-up, Congress needed to encourage responsible parties with sufficient financial capabilities to begin clean-up operations in emergency situations immediately.

599 F.Supp. at 76.

It is clear to the Court that the Government and public interest in this matter is significant. Without the threat of sanctions, an alleged responsible party may not have the incentive to comply with an administrative order. The Government's interest in handling emergency waste situations in an efficacious manner is clearly important. However, the Court finds that the Government's interest can be satisfied in a manner which does not place an unfair risk of erroneous deprivation upon plaintiffs.

Other courts have interpreted § 9607 subsequent to this Court's Order granting the preliminary injunction. In *United States v. Reilly Tar & Chemical Corp.,* 606 F.Supp. 412 (D.Minn.1985), the EPA had already instituted an enforcement action against defendants. After issuance of the EPA Order, the defendant contended that the remedial action ordered was far more expensive that what was required to properly remedy the pollution problem at issue. The court cited comments made by Senator Stafford during the debates on § 9607(c) and stated:

> Senator Stafford's comment, that court could refuse to impose punitive damages because an order issued by an agency was not in accordance with the national contingency plan, can be interpreted to encompass a good faith challenge to the appropriateness (including cost effectiveness) of the proposed remedy.

606 F.Supp. at 420. (emphasis added).

The court went on to state that at the upcoming enforcement proceeding, defend-ant could challenge the EPA order "without being forced in paying exorbitant penalties if its challenge is rejected." *Id.*

In *Wagner Electric Corporation, et al., v. Lee Thomas, et. al.,* 612 F.Supp. 736 (D.Kansas 1985), the court, referring to Senator Stafford's comments, stated:

> Even without this useful legislative history, however, we would construe this phrase as referring to a *"good faith" defense.* Were we not to do so, the statute might well be constitutionally invalid as placing an undue burden on plaintiffs' access to judicial review.

> Accordingly, we construe CERCLA § 107(c)(3) to prohibit a reviewing court from assessing punitive damages against a party who fails to comply with an EPA order in the *reasonble belief* that it has a valid defense to that order.

At 745. It is unclear whether the *Wagner* court adopted a subjective, test of good faith test or an objective test of reasonableness.

 In considering the authorities discussed above, and applying the factors set forth in *Mathews,* supra, to this factual scenario, the Court finds that the phrase "sufficient cause" should be interpreted to mean a "good faith" defense. Under such an interpretation, plaintiffs are sufficiently protected against the threat of punitive damages under § 9607(c)(3). Punitive damages may only be assessed where the Government proves that plaintiffs have refused to comply with the order in bad faith. For example, if the Government can prove that plaintiffs have challenged the merits of the order simply for the purpose of delay, punitive damages should be assessed. Consequently, the risk that plaintiffs would forego a valid challenge to the order would not offend Due Process principles. Finally, a "good faith" defense requirement provides recognition to the defendants' interest in expediting the clean-up of hazardous waste clean-up.

## PLAINTIFFS' FIRST AMENDMENT RIGHT TO PETITION.

 Plaintiffs also argue that the threatened imposition of § 9607(c)(3) damages violates their First Amendment Right to Petition. While plaintiffs' argument is somewhat novel and appealing, the Court respectfully disagrees with plaintiffs' contentions and finds that plaintiffs' First Amendment Right to Petition is not implicated by the facts of this case.

Professor Tribe has examined the distinction between procedural due process and the First Amendment:

> Procedural due process ... guarantees that an individual may participate in the application of general rules to the individual's particular situation, and the First Amendment ... guarantees that an individual be allowed to participate in the most general communicative processess that determine the contours of our social and political thought.

L. Tribe, American Constitutional Law, P. 737 (1978).

Having considered plaintiffs' arguments, the Court finds that the proper analysis of § 9607(c)(3) concerns plaintiffs' Due Process rights, not those rights provided by the First Amendment. Plaintiffs' First Amendment rights were exercised by virtue of plaintiffs' ability to come to court and challenge the provisions at issue.

## PLAINTIFFS' RIGHT TO A DECLARATORY JUDGMENT CONCERNING "SUFFICIENT CAUSE."

This Court has previously found that it presently lacks jurisdiction to hear the merits of the administrative order. The Court still holds to that finding. Accordingly, the Court lacks jurisdiction at this time to render a determination on whether plaintiffs have shown "sufficient cause" within the meaning of § 9607(c)(3).

## CONCLUSION.

For the reasons presented above, both parties' motion for summary judgment are denied insofar as their proposed interpretations of § 9607(c)(3) are rejected. Moreover, plaintiffs' motions concerning the First Amendment and a declaratory judgment are DENIED. However, to the extent that this Court has interpreted § 9607(c)(3) to be constitutional and to provide for a "good faith" defense, summary judgment of this matter is GRANTED.

IT IS FURTHER ORDERED that this order shall serve as Findings of Fact and Conclusions of Law. To the extent that the parties wish to have additional uncontroverted matters included in the record, the parties shall submit such proposed findings by July 21, 1986.